UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

In re:                                                                Case No. 14-75672 (AST)

Carman Avenue Development Corp.,                                       Chapter 11

                                        Debtor
------------------------------------------------------------- x

## NOTICE OF SETTLEMENT

**PLEASE TAKE NOTICE**, that hearing on the terms of a proposed stipulation (the "Stipulation") settling the objection of Carman Development Corp. (the "Debtor") to the proof of claim filed by Garber Brothers Inc. ("Garber") will be held before the Honorable Alan S. Trust on **February 10, 2015 at 2:00 p.m.** at the Long Island Federal Courthouse, 290 Federal Plaza, Room 960, Central Islip, New York.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the Stipulation, must conform to the Bankruptcy Rules and Local Bankruptcy Rules for the Eastern District of New York, as modified by any administrative orders entered in this case, and be filed with the Bankruptcy Court electronically in accordance with General Order 461, be registered users of the Bankruptcy Court's filing system and, by all other parties in interest, on a 3.5 inch disk, in portable document format (PDF), WordPerfect, Microsoft Word DOS text (ASCII) or a scanned imaged of the filling, with a hard copy delivered directly to Chambers, and may be served in accordance with General Order 462, and upon (i) counsel to the Debtor, Macco & Stern, LLP, 2950 Express Drive South, Suite 109, Islandia, New York 11749; and (ii) the Office of the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722, so as to be received no later than **February 3, 2015 at 12:00 p.m.**

**PLEASE TAKE FURTHER NOTICE**, that a copy of the Stipulation is annexed hereto

as **Exhibit A.**

Dated: January ___, 2016
      Islandia, NY

                               **MACCO & STERN, LLP**
                               Attorneys for the Debtor-In-Possession

By:       _____
                               Michael J. Macco
                               A Member of the Firm
                               135 Pinelawn Road, Suite 120 South
                               Melville, New York 11747
                               (631) 549-7900

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

In re:                                                              Case No. 14-75672 (AST)

Carman Avenue Development Corp.,                                    Chapter 11

                                    Debtor
------------------------------------------------------------- x

## STIPULATION SETTLING OBJECTION TO PROOF OF CLAIM

**WHEREAS,** on December 24, 2014 (the "Petition Date"), Motor Parkway Enterprises,

Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code"); and

**WHEREAS**, prior to the Petition Date, the Debtor operated a gas station and

convenience store at the real property located at, and known as, 865 Carman Avenue,

Hauppauge, New York; and

**WHEREAS,** prior to the Petition Date, Garber Brothers, Inc. (the "Claimant") supplied

the Debtor with certain perishable items (collectively, the "Goods") to be sold at the convenience

store; and

**WHEREAS,** in or about 2012, Claimant filed a lawsuit against, *inter alia*, the Debtor, in

the Supreme Court of the State of New York, County of Nassau, assigned index number

062632/2012 (the "State Court Action"); and

**WHEREAS,** Debtor and Claimant entered into a settlement agreement (the "Settlement

Agreement"), annexed hereto as **Exhibit A**, whereby the Debtor and various other non-debtor

entities (the "Keshtgar Entities") owned and operated by the Debtor's principal, Steven Keshtgar

("Keshtgar"), agreed to be jointly and severally liable for the outstanding amounts due to the

Claimant thereafter, and any open invoices would be secured by property of the Keshtgar Entities; and

**WHEREAS**, on or about March 12, 2015, Claimant filed a proof of claim against the Debtor's estate, in the secured amount of $2,381,357.13, assigned proof of claim number 13 (the "Claim"), representing the outstanding balance due from all of the Keshtgar Entities, including the Debtor, as of the Petition Date; and

**WHEREAS,** on or about November 24, 2015, the Debtor filed an objection (the "Objection") to the Claim, seeking to reduce and reclassify the Claim to the amount owed by the Debtor only as a general unsecured claim; and

**WHEREAS**, the Parties have engaged in informal discovery related to the Objection and, in the spirit of compromise, have agreed to settle the Objection and the Claim.

**NOW, THEREFORE**, it is hereby stipulated and agreed as follows:

1.      Upon the approval of the Bankruptcy Court, (i) the Claim shall be reduced to the amount of Four Hundred Thousand and 00/100 ($400,000.00) Dollars and reclassified as a general unsecured claim and (ii) Claimant shall be entitled to an administrative expense claim (the "Admin Expense") pursuant to Bankruptcy Code §503(b)(9) in the amount of Three Thousand Three Hundred Seventy Nine and 55/100 ($3,379.55) Dollars.

2.      The Claim, as reduced pursuant to paragraph 1(i), and Admin Expense claim shall be allowed against the Debtor and shall not be subject to any defense or counterclaim, right of setoff, reduction, avoidance, disallowance or subordination.

3.      The Claimant shall receive distributions on account of the Claim and Admin Expense in the form set forth in and pursuant to the terms of a confirmed chapter 11 plan (the "Plan").

4.      Claimant shall vote the full amount of the Claim to accept the Plan.

5.      The Objection is resolved.

6.      With respect to the Claim and Admin Expense, other than the right to receive distributions under the Plan with respect to the Claim and Admin Expense, the Claimant and its affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustee and attorneys, shall have no further right to payment from, waive and all claim against,   and are hereby barred from asserting any claims whatsoever, whether known or unknown, asserted or not, in law or in equity, against the Debtor, its estate, or its successors or assigns, in existence as of the date of this Stipulation.

7.      The Debtor, its estate, and its successor or assigns, hereby releases any and all claims or causes of action against the Claimant relating in any way to the Settlement Agreement or other agreements between the Claimant and the Debtor.

8.      This Stipulation may not be modified other than by a signed writing executed by the Parties hereto or by order of the Court.

9.      Each person who executes this Stipulation represents that he or she is fully authorized to do so on behalf of the respective Party hereto and that each such party has full knowledge and has consented to this Stipulation.

10.      This Stipulation may be executed in counterparts and a facsimile or electronically transmitted copy of this Stipulation shall be deemed an original.

11.      This Stipulation shall be governed by and construed in accordance with laws of the United States, including the Bankruptcy Code, and the laws of the state of New York.

12.     The Bankruptcy Court shall retain exclusive jurisdiction over this Stipulation and

any and all disputes arising out of or otherwise related to the Stipulation.

Dated: Islandia, New York
January 15, 2016

**MACCO & STERN, LLP**
Attorneys for the Debtor-in-Possession


By:     *s/ Michael J. Macco*
Michael J. Macco
A Member of the Firm
2950 Express Drive South, Suite 109
Islandia, New York 11749
(631) 549-7900


Dated: Boston, Massachusetts
January 15, 2016

**MORGAN, LEWIS & BOCKIUS LLP**
Attorneys for the Claimant


By:     *s/ Christopher L. Carter*
Christopher L. Carter
One Federal Street
Boston, Massachusetts 02110
(617) 951-8000

# EXHIBIT A - SETTLEMENT AGREEMENT

AGREEMENT OF SETTLEMENT

This agreement of settlement (together with the exhibits incorporated by reference, this "Agreement") is made and entered into as of this ____ day of August 2014 (the "Effective Date") by and among the following:

GARBER BROS., INC. ("Garber"),

and

STEVEN KESHTGAR, 211 ENTERPRISE INC., A&B MART & SERVICE, INC., AIRPORT DEVELOPMENT CORP. (d/b/a EXXON SHOP AIRPORT), BAYSIDE DEVELOPMENT LLC., BOHEMIA DEVELOPMENT CORP., BRENTWOOD DEVELOPMENT CORP., CARMAN DEVELOPMENT CORP. (d/b/a EXXON WESTBURY), CENTEREACH DEVELOPMENT CORP. (d/b/a MOBIL CENTEREACH DEVELOPMENT), CORAM ASSOCIATES CORP., GREAT NECK DEVELOPMENT CORP. (d/b/a EXXON SHOP - GREAT NECK), HAUPPAUGE DEVELOPMENT CORP., HOLBROOK DEVELOPMENT CORP., ISLANDIA DEVELOPMENT CORP. (d/b/a EXXON SHOP ISLANDIA), ISLIP DEVELOPMENT CORP. (d/b/a MOBIL SUNRISE), MAPLE AVENUE HAUPPAUGE DEVELOPMENT CORP., MEDFORD DEVELOPMENT CORP. (d/b/a EXXON SHOP - 64), MIDDLE ISLAND DEVELOPMENT CORP., MIDWOOD ENTERPRISES, INC. (d/b/a JERICHO TURNPIKE ENTERPRISES), NORTHPORT ENTERPRISES, INC. (d/b/a MOBIL NORTHPORT), OCEANSIDE ENTERPRISES, INC., (d/b/a EXXON SHOP - OCEANSIDE), PORT JEFFERSON DEVELOPMENT CORP.(d/b/a FARSI FUEL), RONKONKOMA DEVELOPMENT CORP., SMITHTOWN DEVELOPMENT CORP., STONY BROOK INDUSTRIES, INC., SUFFOLK ENTERPRISES (d/b/a AMOCO - SUFFOLK), VALLEY STREAM ENTERPRISES, INC., WESTBURY ENTERPRISES, INC. (d/b/a MOBIL WESTBURY), and WHEELER DEVELOPMENT LLC (collectively, the "Keshtgar Defendants" and, together with Garber, the "Parties")

## RECITALS

WHEREAS, each of the Keshtgar Defendants excluding Steven Keshtgar individually (the "Keshtgar Defendant Entities") owns and operates a convenience store in the Long Island region of the state of New York (each of the Keshtgar Defendant Entities, as well as Motor Parkway Enterprises, Inc. and Cedarhurst Development Corp. (the "Recently Opened Stores") and any New Stores (as that terms is defined herein), but excluding 211 Enterprise Inc., Bayside Development LLC, and Great Neck Development Corp. and any Closed Stores (as that term is defined in paragraph 5), shall hereinafter be referred to as a "Store" and together, collectively, as the "Stores"); and

WHEREAS, Steven Keshtgar represents that, as of the Effective Date, the number of Stores totals 27; and

WHEREAS, Steven Keshtgar is the principal of each of the Keshtgar Defendant Entities and the Stores and directly or indirectly holds the entire ownership interest in the same; and

WHEREAS, Garber sells and delivers merchandise to convenience stores such as those owned and operated by the Stores and, in fact, sold merchandise to the Keshtgar Defendant Entities prior to 2013; and

WHEREAS, Garber filed suit against the Keshtgar Defendants in the Supreme Court of the State of New York, Nassau County in and action bearing the Index No. 602632/2012 (the "Lawsuit"); and

WHEREAS, the Keshtgar Defendants filed counterclaims against Garber in the Lawsuit; and

WHEREAS, Garber would not agree to compromise and settle the Lawsuit without the Keshtgar Defendants agreeing to be bound by certain obligations as set forth herein; and

WHEREAS, the Parties, without any admission of liability, desire to fully and finally compromise and settle all claims and disputes that were raised or could have been raised in the Lawsuit, and to avoid the uncertainty, inconvenience and expense of litigation, upon the terms contained herein; and

WHEREAS, the Keshtgar Defendants have agreed, as more fully detailed below, that, if they breach their obligations under this Agreement (subject to any notice and cure periods provided herein), then a judgment will enter against them in the amount of $1,756,596 (the "Judgment Amount"); and

WHEREAS, the Keshtgar Defendants and Garber have agreed, as more fully detailed below, that, provided that the Keshtgar Defendants timely pay Garber or cause Garber to be paid $1,247,183 (the "Compromise Payment Obligation") through the application of Business Incentive Credits (as that term is defined herein) or otherwise in accordance with the terms of this Agreement, Garber shall not file the Confession (as that term is defined herein) or otherwise enforce its rights thereunder or hereunder; and

WHEREAS, the Compromise Payment Obligation less any amounts applied to reduce the same in accordance with the terms of this Agreement shall hereinafter be referred to as the "Payoff Amount";

NOW, THEREFORE, in consideration of the premises recited above, the mutual promises contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties stipulate and agree as follows:

1.      Incorporation of Recitals. Each of the recitals hereinabove set forth is incorporated herein by reference as if set forth here full.

2.      Term of Agreement. Unless a Confession (as that term is defined in paragraph 12D) gets filed in accordance with subparagraph 12C hereof, this Agreement shall remain in effect until the date on which both the Payoff Amount is reduced to zero in accordance with the terms hereof and all Open Invoices issued prior to that date have been paid in full (the "Term"). The following provisions of this Agreement shall survive the expiration of the Term: 6E, the second sentence of 7B, 7E, 17A, 17B, 18, and, in the event that, prior to the end of the Term,

2

Garber, in accordance with subparagraph 12C, files a Confession (as that term is defined in paragraph 12D) or a replacement Confession, subparagraphs 12A, 12C, 12E, and 12H.

    3.    <u>Obligation to Purchase from Garber</u>. Garber shall make all reasonable efforts to supply all products requested by the Stores. Except where Garber advises Keshtgar in writing that Garber cannot sell and deliver to the Stores specific products that the Stores order or products substantially similar to the same, the Keshtgar Defendants shall cause the Stores, including without limitation each new convenience store that comes to be owned or operated by an entity owned directly or indirectly in whole or in majority part by Steven Keshtgar (each such entity a "<u>New Store</u>") to purchase from Garber all products sold in the Stores (the "<u>Covered Products</u>").

    4.    <u>Business Level Incentive Adjustments</u>.

A. For each calendar month, all Stores' collective payments on account of Invoices, excluding New York prepaid sales taxes on cigarettes (which sales taxes are separate and distinct from the total "Agent to retail dealers" price of cigarettes described in subparagraph 6A on such Invoices, no portion of which shall be excluded under any circumstance), shall be the "<u>Actual Total Monthly Sales</u>" for that month. Subject to the Stores' Actual Total Monthly Sales reaching the levels referenced herein, each Store shall accrue a business incentive credit at the rate determined herein, per store, per calendar month (collectively, the "<u>Business Incentive Credits</u>") with said Business Incentive Credits to be calculated in the manner determined by the following formula:

- Notwithstanding anything else to the contrary otherwise stated herein, no Business Incentive Credit shall accrue until the calendar month following the Effective Date.

- Notwithstanding anything else to the contrary otherwise stated herein, and provided the Keshtgar Defendants at no time commit an event of default that triggers Garber's right under subparagraph 12C to file a Confession, then beginning with the first full calendar month after the Effective Date and for the two calendar months that follow the first full calendar month, the amount of Business Incentive Credits shall be $1,000 per store.

- For each calendar month in which the Actual Total Monthly Sales shall equal or exceed $541,666.66 (the "<u>Total Monthly Sales Minimum</u>"), the amount of Business Incentive Credits shall be $1,000 per store.

- For each calendar month in which Actual Total Monthly Sales shall be equal to or greater than ninety-five percent (95%) of the Total Monthly Sales Minimum but less than the Total Monthly Sales Minimum, the amount of Business Incentive Credits shall be $900 per store.

- For each calendar month in which Actual Total Monthly Sales shall be equal to or greater than ninety percent (90%) of the Total Monthly Sales Minimum but less than ninety-five percent (95%) of the Total Monthly Sales Minimum, the amount of Business Incentive Credits shall be $800 per store.

A/76215537.12

- For each calendar month in which Actual Total Monthly Sales shall be equal to or greater than eighty-five percent (85%) of the Total Monthly Sales Minimum but less than ninety percent (90%) of the Total Monthly Sales Minimum, the amount of Business Incentive Credits shall be $700 per store.

- For each calendar month in which Actual Total Monthly Sales shall be equal to or greater than eighty percent (80%) of the Total Monthly Sales Minimum but less than eighty-five percent (85%) of the Total Monthly Sales Minimum, the amount of Business Incentive Credits shall be $600 per store.

- For each calendar month in which the Actual Total Monthly Sales shall be less than eighty percent (80%) of the Total Monthly Sales Minimum, no Business Incentive Credits shall accrue.

In the event that a Store becomes a Closed Store (as that term is herein defined in paragraph 5), then payments made on account of Open Invoices issued to said Closed Store shall be excluded from the calculation of Actual Total Monthly Sales beginning with the calendar month in which the Store becomes a Closed Store. If a New Store (as that term is defined in paragraph 3) opens, payments made on account of Open Invoices issued to said New Store shall be excluded from the calculation of Actual Total Monthly Sales for the calendar month in which the New Store opens.

B. In the event that Keshtgar opens a New Store that increases the number of Stores, then the Total Monthly Sales Minimum number in subparagraph 4A above shall, beginning with the first full calendar month in which such New Store is in operation, adjust upward to an amount that equals (i) the then current Total Monthly Sales Minimum number (ii) divided by the number of existing Stores prior to the increase (iii) multiplied by the new number of Stores. (In other words, if the number of Stores increases from its initial number as of the Effective Date of 27 to 28, then the $541,666.66 Total Monthly Sales Minimum figure in this paragraph 4 shall increase to $561,728.38, quantified as follows: $541,666.66 ÷ 27 x 28.) In the event that a Store becomes a Closed Store (as that term is defined in paragraph 5) so as to reduce the total number of Stores, then the Total Monthly Sales Minimum figure in this paragraph 4 shall, beginning with the calendar month in which such Store becomes a Closed Store, be adjusted downward to an amount that equals (i) the Total Monthly Sales Minimum (ii) divided by the number of existing Stores prior to the reduction (iii) multiplied by the new number of Stores.

C. The twelve (12) full calendar months following the Effective Date shall be the fiscal year (the "Fiscal Year") for purposes of this Agreement. At the end of each Fiscal Year, the Total Monthly Sales Minimum for each of that year's months shall be added together and divided by twelve (12) to yield an "Adjusted Total Monthly Sales Minimum." Notwithstanding anything to the contrary otherwise stated herein, if by the end of each Fiscal Year, the average Actual Total Monthly Sales for that year: (i) equals or exceeds the Adjusted Total Monthly Sales Minimum, then, for each month during that Fiscal Year that the Stores accrued the Business Incentive Credits at a rate less than $1,000 per month, the Business Incentive Credits for that month shall be increased to equal $1,000; (ii) equals or exceeds ninety-five percent (95%) of the Adjusted Total Monthly Sales Minimum but less than the Adjusted Total Monthly Sales Minimum, then, for each month during that Fiscal Year that the Stores accrued the Business Incentive Credits at a rate less than $900 per month, the Business Incentive Credits for that month shall be increased to equal $900;

4



(iii) equals or exceeds ninety percent (90%) of the Adjusted Total Monthly Sales Minimum but less than ninety-five percent (95%) of the Adjusted Total Monthly Sales Minimum, then, for each month during that Fiscal Year that the Stores accrued the Business Incentive Credits at a rate less than $800 per month, the Business Incentive Credits for that month shall be increased to equal $800; (iv) equals or exceeds eighty-five percent (85%) of the Adjusted Total Monthly Sales Minimum but less than ninety percent (90%) of the Adjusted Total Monthly Sales Minimum, then, for each month during that Fiscal Year that the Stores accrued the Business Incentive Credits at a rate less than $700 per month, the Business Incentive Credits for that month shall be increased to equal $700; and (v) equals or exceeds eighty percent (80%) of the Adjusted Total Monthly Sales Minimum but less than eighty-five percent (85%) of the Adjusted Total Monthly Sales Minimum, then, for each month during that Fiscal Year that the Stores accrued the Business Incentive Credits at a rate less than $600 per month, the Business Incentive Credits for that month shall be increased to equal $600. By way of illustration, if in March of 2015 Actual Total Monthly Sales are eighty-five percent (85%) of the Total Monthly Sales Minimum for that month resulting in Business Incentive Credits for that month of $700 but the average Actual Total Monthly Sales for the first Fiscal Year of the Agreement equal or exceed ninety-five percent (95%) of the Adjusted Total Monthly Sales Minimum, then the Business Incentive Credits for March of 2015 shall be increased from $700 to $900. Within sixty (60) days after the last day of each Fiscal Year, Garber shall provide to Keshtgar a written report (the "Business Incentive Credit Application Report") detailing the calculation of Adjusted Total Monthly Sales Minimum and average Actual Total Monthly Sales for that Fiscal Year, any resulting adjustments to Business Incentive Credits for that Fiscal Year, the total amount of any Make-Up Adjustment due and the amount of each Monthly Make-Up Payment (as those terms are defined in subparagraph 4D) with payment dates, and the current Payoff Amount reflecting such adjustments.

D. To the extent that, after any increases are made to the Business Incentive Credits in accordance with subparagraph 4C, the Business Incentive Credits that the Stores accrued for any month of the prior Fiscal Year are less than $1,000, then the Keshtgar Defendants shall pay to Garber or cause Garber to be paid for each such month and for each Store the difference between the amount of the Business Incentive Credits accrued and $1,000 (the "Make-Up Adjustment"). The total Make-Up Adjustment for said Fiscal Year, if any, shall be divided into twelve (12) equal payments (collectively, the "Monthly Make-Up Payments"), the first of which is to be made on or before the first business day following the fifteenth calendar day (the "First Make-Up Due Date") after delivery to Steven Keshtgar of the Business Incentive Credit Application Report. In each of the eleven (11) calendar months following the calendar month of the First Make-Up Due Date, one Monthly Make-Up Payment shall be made on or before the same calendar day for such month as the calendar day of the First Make-Up Due Date. By way of illustration, if the first Monthly Make-Up Payment is due on November 10th, the second Monthly Make-Up Payment shall be due on December 10th, and so on. Upon receipt by Garber, any Monthly Make-Up Payments shall be applied to reduce the Payoff Amount. Under no circumstances shall any Monthly Make-Up Payment be required under this subparagraph 4D at any time after the Payoff Amount is reduced to zero, nor may Garber collect or receive any Monthly Make-Up Payment that exceeds the remaining Payoff Amount.

E. In the event that Garber is unable to deliver any Covered Products ordered by any Store due to low stock or due to being out of stock, Garber will so inform Keshtgar and will calculate the total

5

that the Store would have paid Garber for said Covered Products had they been available for delivery (the "Out of Stock Credit"). For any month in which an Out of Stock Credit is generated, the Out of Stock Credit shall be added to the amount of products purchased in that month for the purpose of calculating Actual Total Monthly Sales pursuant to subparagraph 4A.

F. In the event of a natural disaster, terrorist attack, a fifty percent (50%) drop in the Dow Jones Industrial Average in a three (3) month period or less (an "Economic Collapse"), outbreak of war, Act of God or other unforeseen cataclysmic event renders substantially impossible the ability of one or both of the Parties to do business (a "Force Majeure"), paragraph 4 will be suspended and the Parties agree to make all reasonable efforts to purchase and deliver the Covered Products as contemplated by this Agreement, until such time as said event no longer renders it impossible for the affected Party to do business. Notwithstanding anything to the contrary otherwise state herein, any suspension of paragraph 4 triggered by an Economic Collapse shall end at the earlier of the date the Dow Jones Industrial Average increases above the mark that triggered the suspension or the date on which the Down Jones Industrial Average shall cease to decrease by more than five percent (5%) for more than sixty days. If there is any dispute as to whether a Force Majeure has occurred or whether it shall have rendered or shall continue to render it impossible for a Party to do business, then such issue or issues shall be resolved by arbitration under the auspices, and pursuant to the rules of the American Arbitration Association with the prevailing party in any such proceeding entitled to recover the attorneys' fees and costs that it incurs in connection with the same.

5.    Closed Store Payments. In the event that any of the Stores are sold, are closed, or cease to purchase all Covered Products from Garber (the pertinent Store in each such case becoming a "Closed Store") and the total number of remaining Stores is less than 27, then the Keshtgar Defendants shall pay or cause Garber to be paid on the first Friday of the first calendar month after the Store becomes a Closed Store, and on the first Friday of each calendar month thereafter for the duration of the Term, via the same method of payment set forth in subparagraph 9A, $1,000 per month on account of each Closed Store (the "Closed Store Payments"), as long as the total number of Stores, including any New Stores, remains less than 27. Under no circumstances shall any payment be required under this paragraph 5 at any time during which the total number of Stores, including any New Stores, equals or exceeds 27 or at any time after the Payoff Amount is reduced to zero. By way of illustration, if there are three Closed Stores and twenty-four Stores that are not Closed Stores, then the Closed Store Payments each month will be $3,000, and if thereafter three New Stores are opened in addition to the twenty-four Stores, the Closed Store Payments would then be zero. Upon payment to Garber of any Closed Store Payments, the Payoff Amount shall be reduced by the amount of said Closed Store Payments. Under no circumstances may Garber collect or receive any Closed Store Payments that exceed the remaining Payoff Amount. Notwithstanding anything to the contrary otherwise stated herein, any payment made to Garber pursuant to the terms of this paragraph 5 shall not relieve the Keshtgar Defendants from their obligations to pay timely, and to cause the Stores to pay timely, any Open Invoices including without limitation Open Invoices to any Closed Store.

A/76215537.12

6. <u>Pricing</u>.

A. All cigarettes purchased by the Stores shall be priced at "Agent to retail dealers" wholesale pricing (as opposed to "Agent to chain stores" pricing) in accordance with Publication 509, *Minimum Wholesale and Retail Cigarette Prices*.

# [REDACTED]

C. Each calendar quarter, Keshtgar shall have the right to request from Garber documents sufficient to determine Garber's Cost ("<u>Proof of Cost</u>") for any ten (10) products of Keshtgar's choice that Garber sold to any of the Stores during the preceding calendar quarter. For any such products, Garber agrees to deliver said Proof of Cost within thirty (30) days of such request.

D. For any product where the Proof of Cost multiplied by the relevant Up-Charge for that product is less than the price paid for said product on any Invoice (as defined below) in that calendar quarter, the difference between the price paid and the Proof of Cost multiplied by the relevant Up-Charge, for each such product in that calendar quarter, shall be applied to reduce the Payoff Amount. Under no circumstances will the Payoff Amount increase as a result of this subparagraph. Nothing herein shall be deemed a waiver by Garber of any rights it may have to recoup monies from the Stores in the event it is determined that Garber has undercharged any of the Stores for Covered Product.

E. The Keshtgar Defendants hereby agree to keep strictly confidential, not to make public, and not to disclose to anyone in any manner the pricing formula and figures referenced in sub-paragraph 6B, except as may be required by law.

7. <u>Application of Business Incentive Credits</u>.

A. If a Store becomes a Closed Store, then no Business Incentive Credits shall accrue for that Store for the calendar month in which the Store becomes a Closed Store. If a New Store opens, then no Business Incentive Credit shall accrue for the calendar month that the New Store opens.

B. The Payoff Amount shall be reduced by the amount of any and all Business Incentive Credits earned, and as such, the Business Incentive Credits applied to reduce the Payoff Amount shall not be transmitted to Keshtgar. Once the Payoff Amount is reduced to zero, any earned Business Incentive Credits that were not applied to reduce the Payoff Amount, and any Business Incentive Credits earned after the Payoff Amount is reduced to zero, will be promptly remitted to Keshtgar.

A/76215537.12

7

C. Within thirty (30) days of the last day of each quarter of the Fiscal Year, Garber shall provide to Keshtgar a written report detailing: (i) the amount of Actual Total Monthly Sales for each month of such quarter, including the amount of any Out of Stock Credits earned in each month, if any; (ii) the amount of Business Incentive Credits earned during each month of such quarter and the amount of Closed Store Payments made during each month of such quarter, if any; (iii) an explanation and calculation of any other amounts applied to reduce the Payoff Amount during such quarter; and (iv) the total remaining Payoff Amount as of the first day of such quarter and as of the last day of such quarter.

D. In the event that credits owed Keshtgar for purchases made by the Keshtgar Defendant Entities during August and September 2012 (the "Old Credits") were not already applied to reduce the amount that Garber claimed was owed by the Keshtgar Defendants in the Lawsuit, Garber shall apply any remaining Old Credits to reduce the Payoff Amount. Garber shall confirm the above in writing, documenting the amount of the Old Credits and the manner of their application, within thirty (30) days of the Effective Date.

E. The Keshtgar Defendants hereby agree that they and the Stores shall keep strictly confidential, shall not make public, and shall not disclose to anyone in any manner the existence or amount of the Business Incentive Credits referenced in paragraphs 4 & 7, except as may be required by law.

    8.    <u>Terms</u>.

A. At the time of Garber's delivery of product to each of the Stores, Garber shall deliver in hand to a representative of the same an invoice for said product (all invoices so delivered shall hereinafter be referred to as the "<u>Invoices</u>" and, until paid, the "<u>Open Invoices</u>").

B. Except as otherwise set forth herein, the terms set forth on the Invoices shall be binding upon Keshtgar and each of the Stores and the Keshtgar Defendants shall cause the Stores to make timely payment on all Open Invoices.

C. Each of the Invoices shall be payable on or before 28 days after its date, which will be the date of said delivery. The above date on which each Invoice is payable is the "<u>Due Date</u>."

D. Garber shall supply and deliver the Covered Products on a once per week basis.

    9.    <u>Payment of Invoices</u>.

A. Beginning on the fourth Friday after the date of the first delivery of product by Garber to any of the Stores, and continuing on every Friday thereafter for so long as any Stores purchase product from Garber, the Keshtgar Defendants shall cause one or more checks on an account with sufficient funds to honor the same to be delivered (that is, to arrive at Garber each such Friday) to the attention of Michael D'Ortenzio (or to the attention of someone else, if Garber notifies Keshtgar to do so) at Garber's headquarters at 1 Kay Way, Stoughton, MA 02072. Said checks shall be in an amount sufficient to pay all Open Invoices then currently due and all Open Invoices with Due Dates prior to and including the following Friday. Said checks shall be deposited or cashed no sooner than the Thursday following the Friday on which the checks are delivered. Payment in accordance with this subparagraph 9A shall constitute timely payment for Invoices.

A/76215537.12

B. Garber shall provide written notice to Keshtgar (by email to skeshtgar@aol.com and by overnight mail to 701 West Montauk Highway, Bayshore, NY 11706) of any violation of the foregoing sub-paragraph 9A and the Keshtgar Defendants shall have three (3) calendar days from the date of the email notice to cure the same, by delivery of the check(s) required under subparagraph 9A to the attention of Michael D'Ortenzio (or to the attention of someone else, if Garber notifies Keshtgar to do so) at Garber's headquarters at 1 Kay Way, Stoughton, MA 02072. Notwithstanding the foregoing sentence, if the Keshtgar Defendants fail to timely perform the obligations set forth in the foregoing paragraph 9A on more than five (5) occasions in any one calendar year, then it shall be deemed, at Garber's option, an Event of Default that triggers Garber's rights under paragraph 12C hereof.

10.    Security for Amounts of Open Invoices.

A. Each of the Keshtgar Defendant Entities hereby grants to Garber, to secure the payment and performance in full of all obligations owing by any Keshtgar Defendant or any Store to Garber pursuant to any Open Invoices (and not just obligations owing to Garber pursuant to Open Invoices relating to that single Keshtgar Defendant Entity or Store), a security interest in and pledges and assigns to Garber the following properties, assets and rights of such Keshtgar Defendants, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all personal property of every kind and nature including all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents (including, if applicable, electronic documents), accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money (including, without limitation, management fees, incentive allocations and other compensation), insurance claims and proceeds, and all general intangibles (including all payment intangibles).

B. Each Keshtgar Defendant Entity hereby irrevocably authorizes Garber at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of such Keshtgar Defendant Entity or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the State or such jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the Uniform Commercial Code of the State of New York or such other jurisdiction for the sufficiency or filing office acceptance of any financing statement or amendment, including whether such Keshtgar Defendant Entity is an organization, the type of organization and any organizational identification number issued to such Keshtgar Defendant Entity. The Keshtgar Defendants agree to furnish any such information to Garber promptly upon Garber's request.

C. Notwithstanding anything to the contrary otherwise stated herein, the security interest granted to Garber pursuant to this paragraph 10 by each Store whether on or after the Effective Date shall be and shall remain subordinated to (1) any security interest granted by the applicable Store to New York Commercial Bank ("NYCB") in any or all of the Collateral (the "NYCB Liens") to

9

secure obligations owing by such Store to NYCB which exist and are outstanding as of the Effective Date (such obligations owing by such Store being hereinafter referred to as the "NYCB Obligations"), and (2)  in the event of the repayment of all or any portion of a Store's NYCB Obligations, to any security interest granted by such Store to a new bona fide commercial lender unaffiliated with Keshtgar and any Store which lends money to such Store (a "Bona Fide Lender") to secure obligations owing to such Bona Fide Lender from such Store. To effectuate this sub-paragraph 10C, simultaneously with the closing of any loan to a Bona Fide Lender contemplated by this sub-paragraph 10C, Garber shall enter into a subordination agreement consistent with the terms of this sub-paragraph 10C in a form reasonably acceptable to Garber, Keshtgar, and said Bona Fide Lender.

11. Payment of All Core-Mark Invoices.

A. The Keshtgar Defendants each hereby represent and warrant that Core-Mark Mid-Continent, Inc. ("Core-Mark") has issued invoices to the Keshtgar Defendant Entities and other Stores (the "Core-Mark Invoices") and that the Keshtgar Defendants shall cause to be paid in full each of the Core-Mark Invoices on or before the date for payment set forth on the same and shall simultaneously with said payments (that is, the same day said payments are made) transmit to Garber copies of the Core-Mark Invoices so paid and copies of the checks by which payment of the same shall have been made (collectively, the "Proof of Payment to Core-Mark"), transmitting said Proof of Payment to Core-Mark to Garber by email (to mdortenzio@garberbros.com) and by overnight mail to the attention of Michael D'Ortenzio, 1 Kay Way, Stoughton, MA 02072.

B. Immediately upon the payment to Core-Mark of all Core-Mark Invoices, the Keshtgar Defendants shall take all actions reasonably within their power, including the commencement and diligent prosecution of legal action against Core-Mark, to cause all UCC filing statements filed or recorded by Core-Mark with respect to any Stores to be terminated within ninety days of the Effective Date. Notwithstanding anything to the contrary otherwise stated herein, because the damages to Garber in the event of a breach by the Keshtgar Defendants of the obligations imposed by the foregoing sentence are not quantifiable, if any UCC filing statement filed or recorded by Core-Mark has not been terminated within ninety (90) days of the Effective Date, then as liquidated damages (and not as a penalty) for the Keshtgar Defendants' failure to comply with the foregoing sentence, and as its exclusive remedy for the same (but not for any other Event of Default under this Agreement), no Business Incentive Credits shall thereafter accrue in favor of any Store until each UCC filing statement filed or recorded by Core-Mark with respect to each Store has been terminated.

12. Forbearance and Confession of Judgment.

A. The Keshtgar Defendants hereby acknowledge that each of the Keshtgar Defendants is jointly and severally liable to Garber for the Payoff Amount, and, if a Confession (as the term in defined in subparagraph 12C) shall be filed in accordance with subparagraph 12C hereof, for the Judgment Amount.

B. Except as expressly set forth in this Agreement, Garber agrees to forbear from continuing the prosecution of the Lawsuit and from taking any steps to enter a judgment based upon the



A:76215537.12

Confession (defined below), and otherwise from exercising and enforcing its rights and remedies thereunder and hereunder.

C. It shall constitute an event of default (a "Default") under this Agreement if any of the Keshtgar Defendants fail to perform or comply with any of the terms of this Agreement, and Garber, at its option, after the expiration of a ten (10) day written notice to cure such Default (by email to skeshtgar@aol.com and overnight mail to 701 West Montauk Highway, Bayshore, NY 11706 and by email to aecurto@forchellilaw.com and overnight mail to 333 Earle Ovington Blvd, Suite 1010, Uniondale, NY 11553) without cure of such Default, except that, in the case of a Default under subparagraph 9B no such written notice or time to cure shall be required, will have the right to file the Confession (defined below) and take all other steps necessary to secure the entry of, and to enforce, a judgment based upon the Confession, for the full amount thereof, and exercise and enforce all of Garber's rights and remedies thereunder and/or at law. In the event that any of the Keshtgar Defendants take any judicial action to attempt to restrain in any way Garber's exercise of the rights afforded it in this subparagraph 12C, then, provided it substantially prevails in such action, Garber shall be entitled to recover its attorneys fees' and costs incurred in defending or otherwise responding to said action.

D. Simultaneously with the execution of this Agreement, Keshtgar shall execute and deliver to Garber an affidavit of confession of judgment (the "Confession"), in the form annexed hereto as *Exhibit B*, which Confession shall be held by Garber in accordance with the terms and provisions hereof. Immediately upon entry of a judgment based on the Confession (or any replacement Confession), Garber shall cause to be filed with the Court a Partial Satisfaction of Judgment to reflect all amounts applied to reduce the Payoff Amount, including all Business Incentive Credits earned and Closed Store Payments made, in accordance with the terms hereof. Notwithstanding anything to the contrary otherwise stated herein, payments of amounts payable pursuant to Invoices shall not reduce the Payoff Amount.

E. On or up to 90 days before January 31, 2017, and July 31, 2019, respectively, the Keshtgar Defendants shall provide Garber with a replacement Confession, in the form annexed hereto as *Exhibit B* except that the notarization date shall be changed to the date the document is executed and, in the event that Steven Keshtgar dies or becomes incapacitated, it shall be signed by an alternate duly appointed representative of each of the Keshtgar Defendants. Upon said delivery this replacement Confession shall replace and supersede the Confession for the purposes of subparagraph 12D. The failure of the Keshtgar Defendants to provide Garber with a replacement Confession shall constitute an event of default hereunder.

F. Upon the reduction of the Payoff Amount to zero, and provided neither the Confession nor any replacement Confession shall have been filed prior to that time in accordance with subparagraph 12C, (i) Garber shall provide Keshtgar written notice of same, to the recipients described in subparagraph 12C, and will remit and return with said notice the Confession (or any replacement Confession); and (ii) Garber shall no longer have any right under this Agreement to file, enter or collect judgment pursuant to the Confession (or any replacement Confession) not already so filed and shall not otherwise seek further payment of the Judgment Amount or any legal, equitable, consequential or special damages whatsoever based on its claims in the Lawsuit or the liability described in subparagraph 12A.

A/76215537.12

G. Notwithstanding anything to the contrary otherwise stated herein, (a) the Keshtgar Defendants shall have the unconditional right to remit to Garber the total remaining Payoff Amount, without any prepayment penalty or interest, at any time, including during any notice or cure period, and thereby reduce the Payoff Amount to zero; and (b) if a Confession is filed in accordance with subparagraph 12C, payment of the Payoff Amount will not relieve the Keshtgar Defendants of their obligation to pay the Judgment Amount.

H. Notwithstanding anything to the contrary otherwise stated herein, any judgment entered against any of the Keshtgar Defendants based upon the Confession (or any replacement Confession) shall not relieve the Keshtgar Defendants or any of the Stores from their obligations to pay or to cause to be paid Open Invoices, nor shall any such judgment entered based upon the Confession (or any replacement Confession) include any amounts of Invoices or Open Invoices. Furthermore, nothing in the terms of this Agreement shall relieve the Keshtgar Defendants or any of the Stores from their obligations to pay or to cause to be paid Open Invoices or constrain Garber from enforcing any and all rights it may have to collect amounts due on Open Invoices.

13.    Credit Applications.

A. Keshtgar and each of the Keshtgar Defendants hereby ratifies and agrees to continue to be bound by the credit applications that Keshtgar executed with respect to each Store other than the Recently Opened Stores.

B. Simultaneously with the execution of this Agreement, Keshtgar agrees to execute, as an owner and/or officer and as a guarantor, a credit application for each of the Recently Opened Stores in the form attached hereto as *Exhibit C*.

C. Prior to each New Store ordering product from Garber, Keshtgar shall execute credit applications, as an owner and/or officer and as a guarantor, in substantially the same form as the application attached hereto as *Exhibit C*.

14.    Stipulation of Discontinuance. Upon the execution of this Agreement, the parties, through their counsel, shall each sign and cause to be filed in the Lawsuit a Stipulation of Discontinuance in the form attached hereto as *Exhibit D*.

15.    Time is of the Essence; Independent Covenant. Except to the extent otherwise expressly set forth herein, time is of the essence with respect to all obligations under this Agreement. The obligations of the Parties to this Agreement are independent obligations and no breach of this Agreement by any of the Parties hereto shall relieve any other of the Parties from their obligations hereunder or deprive any of the Parties of any remedy afforded herein.

16.    Representations and Warranties of the Keshtgar Defendants. The Keshtgar Defendants each hereby make the following representations and warranties to Garber, each of which shall be true and correct in all material respects as of the date of the execution of this Agreement. The Keshtgar Defendants acknowledge that the execution of this Agreement by Garber and the consummation of the transactions contemplated herein has been and will be made in material reliance by Garber on such representations and warranties.

A/76215537.12

12



A.     *Authority.* This Agreement and all documents executed by or on behalf of the Keshtgar Defendants, or any of them, in connection herewith, are or, upon the execution thereof, will be valid, binding, and enforceable upon them, subject to bankruptcy, insolvency, reorganization, moratorium, or similar laws or by equitable principles relating to or limiting the rights of creditors generally. Keshtgar is duly authorized to bind the other Keshtgar Defendants and the Stores to the terms and provisions hereof and to execute this Agreement and all other documents executed in connection herewith. Keshtgar shall furnish to Garber such documents as Garber shall reasonably request to evidence the foregoing authority and matters related thereto.

B.     *Decision to Enter into Agreement.* This Agreement and the documents referred to herein are and will be entered into of the Keshtgar Defendants' free will, without force or duress. The Keshtgar Defendants' decision to enter into this Agreement and the documents referred to herein or related hereto is a fully informed decision, and the Keshtgar Defendants are aware of all legal and other ramifications of such decision.

C.     *Advice of Legal Counsel.* The Keshtgar Defendants have consulted with and have been represented by legal counsel of their own choice in connection with the meaning, interpretation, negotiation, drafting, and effect of this Agreement and the documents referred to herein and related hereto.

D.     *No Reliance upon Garber.* Neither Garber nor any representative of Garber nor any other person has made to any of the Keshtgar Defendants or their representatives any express or implied representations or warranties of any type, whether oral or written, regarding any of the transactions contemplated by this Agreement or the related documents. There are no other express or implied representations or warranties by Garber or any representative of Garber under or in connection with this Agreement, and Borrowers have not relied on any oral or written statements of Garber or any representative of Garber.

E.     *Accuracy of Statements.* This Agreement and all exhibits and other information furnished or to be furnished by or on behalf of the Keshtgar Defendants and in connection with this Agreement or any of the transactions contemplated herein does not and will not, to the knowledge of Keshtgar, contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained herein or therein, in light of the circumstances in which they are made, not misleading.

F.     *Stores.* Together, each convenient store defined as a "Store" in the first "Whereas" clause of this Agreement, are collectively all of the convenient stores currently directly or indirectly owned and operated by Keshtgar.

17.    Release.

A. Except as may be expressly set forth herein, each of the Keshtgar Defendants hereby irrevocably, unconditionally, and with prejudice, waives, releases, discharges, and acquits Garber, its officers, directors, employees, agents, affiliates and representatives (the "Garber Parties") from and against any and all claims, demands, causes of action and liabilities, and irrevocably waives and relinquishes any and all rights of setoff, counterclaims and defenses, whether known or unknown, contingent or absolute, liquidated or unliquidated or otherwise,

13

A/76215537.12



arising from or related to any act or omission of any of the Garber Parties, which exist or may exist from the beginning of time to the date this Agreement is executed and delivered.

B. Except as may be expressly set forth herein, Garber hereby irrevocably, unconditionally, and with prejudice, waives, releases, discharges, and acquits Keshtgar, and all other Keshtgar Defendants, and each of the latter's officers, directors, employees, agents, affiliates and representatives (the "Keshtgar Defendant Parties") from and against any and all claims, demands, causes of action and liabilities, and irrevocably waives and relinquishes any and all rights of setoff, counterclaims and defenses, whether known or unknown, contingent or absolute, liquidated or unliquidated or otherwise, arising from or related to any act or omission of any of the Keshtgar Defendant Parties, which exist or may exist from the beginning of time to the date this Agreement is executed and delivered. For the sake of clarity, nothing in this subparagraph 17B shall constrain Garber from exercising the rights granted to it under subparagraph 12C hereof if and when (or after) those rights are triggered.

18.    Governing Law. This Agreement and all matters related hereto shall be construed and enforced in accordance with the laws of the State of New York without reference to principles of conflicts of law.

19.    Further Assurances. Garber and the Keshtgar Defendants shall execute and deliver such further instruments, agreements, and other documents, and shall take such further actions, as the other reasonably may request to effectuate the transactions contemplated by, and the terms and provisions of, this Agreement.

20.    Miscellaneous. Garber and the Keshtgar Defendants each hereby represents that (i) it/he has reviewed this Agreement and the Confession with its/his independent counsel and that it/he understands, consents, and agrees to the terms and provisions hereof, and (ii) this Agreement, the Confession, and the documents referred to in, ancillary to, and executed in connection with, this Agreement, will be the legal, valid, and binding obligations of the parties hereto enforceable in accordance with their terms. This Agreement may not be amended except in a writing signed by the parties hereto. In the event any one or more of the provisions of this Agreement shall for any reason be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors, and assigns. Nothing in this Agreement, express or implied, is intended to confer on any person or entity other than the parties hereto, or their respective successors, and assigns, any rights, remedies, obligations, or liabilities. This Agreement sets forth the entire understanding of the parties with respect to the subject matter of this Agreement. No party is entering into this Agreement in reliance upon, or is concerned with the accuracy or completeness of, anything, oral or written, expressed or given to it by the other party, except as set forth in this Agreement. This Agreement may be executed in separate counterparts which, together, shall constitute one and the same fully executed Agreement. Copies of signatures, transmitted electronically, shall be sufficient to bind each party to the terms and provisions of, and give effect to, this Agreement. Each Party shall bear its own attorneys' fees and costs incurred through the execution of this Agreement. This Agreement shall in no manner constrain Garber from supplying and delivering products and/or services to any person

14

or entity. Notwithstanding anything in this Agreement to the contrary, in no event shall Garber be liable to the Keshtgar Defendants or to any of the Stores and in no event shall any of the Keshtgar Defendants or any of the Stores be liable to Garber for any consequential, special, exemplary, incidental, or punitive damages, including without limitation, lost profits or business opportunities, or losses attributable to or arising from overhead allocations or general and administrative costs and expenses. The failure of any of the Parties to give notice of or otherwise to enforce any breach or multiple breaches of this Agreement, or the failure to do so within any particular period of time, shall not be a waiver of that Party's rights to enforce that, those, or any other breaches of the Agreement.

[signatures appear on next two pages]

Dated: New York, New York, August __, 2014

GARBER BROTHERS, INC.

By: _____
Michael A. D'Ortenzio, Senior Vice
President

BINGHAM McCUTCHEN LLP

By:_____
Charles L. Solomont
399 Park Avenue
New York, NY 10022
(212) 705-7000
*Attorneys for Garber Brothers, Inc.*

STEVEN KESHTGAR

211 ENTERPRISE INC., A&B MART &
SERVICE, INC., AIRPORT DEVELOPMENT
CORP. (d/b/a EXXON SHOP AIRPORT),
BAYSIDE DEVELOPMENT LLC., BOHEMIA
DEVELOPMENT    CORP.,    BRENTWOOD
DEVELOPMENT    CORP.,    CARMAN
DEVELOPMENT CORP. (d/b/a EXXON
WESTBURY),              CENTEREACH
DEVELOPMENT    CORP. (d/b/a MOBIL
CENTEREACH DEVELOPMENT), CORAM
ASSOCIATES CORP., GREAT NECK
DEVELOPMENT CORP. (d/b/a EXXON SHOP
-   GREAT   NECK),   HAUPPAUGE
DEVELOPMENT    CORP.,    HOLBROOK
DEVELOPMENT    CORP.,    ISLANDIA
DEVELOPMENT CORP. (d/b/a EXXON SHOP
ISLANDIA), ISLIP DEVELOPMENT CORP.
(d/b/a MOBIL SUNRISE), MAPLE AVENUE
HAUPPAUGE    DEVELOPMENT    CORP.,
MEDFORD DEVELOPMENT CORP. (d/b/a
EXXON SHOP - 64), MIDDLE ISLAND
DEVELOPMENT    CORP.,    MIDWOOD
ENTERPRISES,   INC.   (d/b/a   JERICHO
TURNPIKE ENTERPRISES), NORTHPORT
ENTERPRISES,   INC.   (d/b/a   MOBIL
NORTHPORT), OCEANSIDE ENTERPRISES,
INC., (d/b/a EXXON SHOP - OCEANSIDE),
PORT    JEFFERSON    DEVELOPMENT
CORP.(d/b/a FARSI FUEL), RONKONKOMA
DEVELOPMENT    CORP.,    SMITHTOWN
DEVELOPMENT CORP., STONY BROOK
INDUSTRIES, INC., SUFFOLK ENTERPRISES
(d/b/a AMOCO - SUFFOLK), VALLEY
STREAM ENTERPRISES, INC., WESTBURY
ENTERPRISES,   INC.   (d/b/a   MOBIL
WESTBURY),       and       WHEELER
DEVELOPMENT LLC

By: _____
Steven Keshtgar, Authorized Agent

16

FORCHELLI, CURTO, DEEGAN,
SCHWARTZ, MINEO & TERRANA, LLP

By:_____
        Andrew E. Curto
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
516-248-1700
*Attorneys for Steven Keshtgar and the other
Keshtgar Defendants*

17

# EXHIBIT A

[REDACTED]





# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------x
GARBER BROS., INC.,                                                Index No.

                          Plaintiff,

        -against-

STEVEN KESHTGAR, 211 ENTERPRISE INC., A&B MART
& SERVICE, INC., AIRPORT DEVELOPMENT CORP. (d/b/a
EXXON SHOP AIRPORT), BAYSIDE DEVELOPMENT LLC.,
BOHEMIA DEVELOPMENT CORP., BRENTWOOD
DEVELOPMENT CORP., CARMAN DEVELOPMENT CORP.
(d/b/a EXXON WESTBURY), CENTEREACH
DEVELOPMENT CORP. (d/b/a MOBIL CENTEREACH
DEVELOPMENT), CORAM ASSOCIATES CORP., GREAT
NECK DEVELOPMENT CORP. (d/b/a EXXON SHOP -
GREAT NECK), HAUPPAUGE DEVELOPMENT CORP.,
HOLBROOK DEVELOPMENT CORP., ISLANDIA
DEVELOPMENT CORP. (d/b/a EXXON SHOP ISLANDIA),
ISLIP DEVELOPMENT CORP. (d/b/a MOBIL SUNRISE),
MAPLE AVENUE HAUPPAUGE DEVELOPMENT CORP.,
MEDFORD DEVELOPMENT CORP. (d/b/a EXXON SHOP -
64), MIDDLE ISLAND DEVELOPMENT CORP., MIDWOOD
ENTERPRISES, INC. (d/b/a JERICHO TURNPIKE
ENTERPRISES), NORTHPORT ENTERPRISES, INC. (d/b/a
MOBIL NORTHPORT), OCEANSIDE ENTERPRISES, INC.,
(d/b/a EXXON SHOP - OCEANSIDE), PORT JEFFERSON
DEVELOPMENT CORP.(d/b/a FARSI FUEL),
RONKONKOMA DEVELOPMENT CORP., SMITHTOWN
DEVELOPMENT CORP., STONY BROOK INDUSTRIES,
INC., SUFFOLK ENTERPRISES (d/b/a AMOCO - SUFFOLK),
VALLEY STREAM ENTERPRISES, INC., WESTBURY
ENTERPRISES, INC. (d/b/a MOBIL WESTBURY), and
WHEELER DEVELOPMENT LLC,

                          Defendants.
--------------------------------------------------------------x

## AFFIDAVIT FOR JUDGMENT BY CONFESSION

A/762A1751 1

**Steven Keshtgar**, being duly sworn, deposes and says:

1. I own and operate each of the defendant entities referenced in the caption on the first page of this affidavit (the "Defendant Entities" and, with me, the "Defendants"). I am duly authorized by each of the Defendant Entities to make this affidavit for judgment pursuant to CPLR 3218.

2. Each of the Defendant Entities is incorporated in New York and each has a principal place of business, or resides, in the State of New York. I reside in the County of Suffolk in the State of New York.

3. The Defendants hereby confess judgment in this court against each of them jointly and severally in favor of the plaintiff, Garber Bros., Inc. (the "Plaintiff"), for the sum of $1,756,596.00 plus costs and disbursements as per the CPLR, and authorize entry thereof in favor of the Plaintiff or its assigns in the County of Nassau in the State of New York.

4. This confession of judgment is for a debt justly due or to become due to the Plaintiff, exclusive of past interest and attorneys' fees, arising out of the failure of the Defendants Entities to pay Plaintiff amounts for goods sold and delivered, my personal guaranty of such amounts, and the Defendants' agreement, as part of the settlement of the Plaintiff's law suit to collect said amounts, to be jointly and severally responsible for the payment of the same in the event of a breach of the settlement agreement.

5. This confession of judgment is not for the purpose of securing the Plaintiff against a contingent liability nor for any purpose prohibited by CPLR 3201.

Sworn to before me this
?  day of August, 2014

STEVEN KESHTGAR,
Individually and as the duly authorized
representative of each of the Defendant Entities

Notary Public

.otary Public, State of ...... York
No. 02RO5081620
Qualified in Nassau County
Commission Expires June 30, 2015

A76241751 I

2



# EXHIBIT C



**GARBER**
*BROS., INC.*
Everything today's convenience store needs

Route 139 at Kay Way
Stoughton, MA 02072
781-341-0800 or 800-544-0773
781-341-4702 (Fax)

## CREDIT APPLICATION

Account :_____ Sales Name/#:_____(For Internal Use Only)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BUSINESS INFORMATION:**

Business (legal) name ("Applicant"): _____

Doing business as: _____

Business Address: _____

City: _____ State: _____ Zip: _____

Business telephone:_____ Fax: _____

Email Address: _____

Hours of operation: _____FID or EIN # (as applicable):_____

State Cigarette License #: _____

City Cigarette license #:_____State tax #: _____

Name and telephone number of Accounts Payable contact: _____

_____

Circle one:
Is this business: a CORPORATION,  PARTNERSHIP,  or SOLE PROPRIETORSHIP?

If applicable:  State of incorporation? _____ Incorporation date: _____

If a partnership, how many partners? _____

Starting date of this business:_____ Date you acquired: _____

Do you own, rent, or lease this property: _____

If rented/leased, name of property owner: _____

Address: _____

City: _____ State: _____ Zip:_____

Telephone: _____ Date rent/lease expires: _____

Initials: _____



_____



## BUSINESS OWNERSHIP

**(Note: Information is required for all partners; use an additional sheet of paper if necessary).**

Circle one:

Are you:              an officer        an owner            a partner

Name: _____

Title (if incorporated): _____

Home Address: _____

City: _____    Do you own this property? _____

State: _____ Zip: _____    Social Security #: _____

Home phone: _____    Cell: _____

Email Address: _____

Circle one:

Are you:              an officer        an owner            a partner

Name: _____

Title (if incorporated): _____

Home Address: _____

City: _____    Do you own this property? _____

State: _____ Zip: _____    Social Security #: _____

Home phone: _____    Cell: _____

Email Address: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Identification verified by: _____    Document verified: _____
                              (Salesman)

#: _____
       (Document number)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Initials: _____



Garber Bros., Inc. Credit & Collection Policy, April 2012 *(Revision 4: 4/11/12)*                    Page 2
A/76241804.1

## CREDIT INFORMATION

**BUSINESS TRADE REFERENCES**   (please do not list COD accounts or Credit Cards)

1) Name:_____ Telephone #: _____

Address: _____

City: _____ State: _____ Zip: _____

Account #: _____ Contact name: _____

2) Name:_____ Telephone #: _____

Address: _____

City: _____ State: _____ Zip: _____

Account #: _____ Contact name: _____

3) Name:_____ Telephone #: _____

Address: _____

City: _____ State: _____ Zip: _____

Account #: _____ Contact name: _____

## BANK REFERENCE INFORMATION

(If more than one bank, list additional bank information on a separate sheet of paper)

Name of Bank: _____

Bank Address: _____

City: _____ State: _____ Zip: _____

Name as it appears on the account: _____

Business Checking Account #: _____

Business Checking Account #: _____

The undersigned does authorize the listed bank and trade references to release banking and reference information on the applicant to Garber Bros., Inc.

Name (printed): _____ Title: _____

Signature: _____ Date: _____

Initials: _____

### TERMS AND CONDITIONS

All invoices are due in full according to their terms. In the event of default by the Applicant of any payment due Garber Bros., Inc. ("GBI"), the undersigned is hereby liable to pay the entire balance due plus interest (at the annual rate of the lower of 18% or the maximum amount permitted by law), costs of collection, late charges, court costs and reasonable attorney's fees.

A $25.00 handling charge, or the maximum amount permitted by law, will be assessed on all returned checks.

Garber Bros., Inc. does not guaranty the sell-through of merchandise. GBI's liability to the applicant or the undersigned for any claim of breach of contract or any other cause of action shall be limited to either the replacement of goods sold to Applicant by GBI or refund of the purchase price for such goods and in no case shall GBI or any of its shareholders, directors, officers, agents or representatives be held liable for special, indirect, incidental, consequential or punitive damages. With respect to all merchandise sold to Applicant by GBI, all express and implied warranties including the warranties of merchantability, fitness or use, and fitness for a particular purpose are specifically excluded.

The undersigned warrants that GBI will be notified in writing and by certified mail of any change in ownership, the name of the business, or the business structure under which credit is established.

The Applicant hereby grants to Garber, to secure the payment and performance in full of the obligations of the Applicant to to pay Garber for merchandise and all other obligations and indebtedness of the Applicant to GBI, including interest as allowed by law, costs of collection, late charges, court costs and reasonable attorney's fees, a security interest in and pledges and assigns to Garber the following properties, assets and rights of the Applicant, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all personal property of every kind and nature including all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents (including, if applicable, electronic documents), accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money (including, without limitation, management fees, incentive allocations and other compensation), insurance claims and proceeds, and all general intangibles (including all payment intangibles).

The Applicant hereby irrevocably authorizes Garber at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of such Keshtgar Defendant Entity or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the State or such jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the Uniform Commercial Code of the State of New York or such other jurisdiction for the sufficiency or filing office acceptance of any financing statement or amendment, including whether the Applicant is an organization, the type of organization and any organizational identification number issued to the Applicant. The Applicant and the undersigned agree to furnish any such information to Garber promptly upon Garber's request.

**Must be signed by an owner, an officer or a partner, as identified on page 2.**

Print name: _____    Title: _____

Signature: _____    Date: _____



---

Garber Bros., Inc. Credit & Collection Policy, April 2012 *(Revision 4: 4/11/12)*    Page 4
AJ762413:04.1



## GUARANTY

The undersigned represents the information on this application to be true and complete and acknowledges that it is being provided to Garber Bros., Inc. ("GBI") in consideration of, and is being relied upon by GBI in evaluating an application for, the extension of credit terms for the purchase of merchandise. The undersigned certifies that he/she has the authority to enter into a binding contract on behalf *of the above named business* (the "Applicant") and agrees and understands that he/she receives and accepts said merchandise as an unlimited partner with the Applicant and guarantees, and unconditionally assumes personal liability for, the obligation to pay for such merchandise and all other obligations and indebtedness of the Applicant to GBI, including interest as allowed by law, costs of collection, late charges, court costs and reasonable attorney's fees. It is understood that this guarantee shall be a *continuing and irrevocable guarantee and indemnity* for such obligations and indebtedness and shall remain in effect until written notice by certified mail is received by GBI rescinding the guaranty for future deliveries.

Guarantor #1:
Print name: _____

Signature: _____    Date: _____

Guarantor #2:
Print name: _____

Signature: _____    Date: _____

Signatures witnessed by (name printed): _____

Witness's signature: _____    Date: _____

Telephone number: _____

**A RESALE CERTIFICATE ISSUED TO GARBER BROS., INC. MUST BE ATTACHED TO THIS APPLICATION.**



# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------x

GARBER BROS., INC.,

                        Plaintiff,

      -against-

STEVEN KESHTGAR, 211 ENTERPRISE INC., A&B MART
& SERVICE, INC., AIRPORT DEVELOPMENT CORP. (d/b/a
EXXON SHOP AIRPORT), BAYSIDE DEVELOPMENT LLC.,
BOHEMIA DEVELOPMENT CORP., BRENTWOOD
DEVELOPMENT CORP., CARMAN DEVELOPMENT CORP.
(d/b/a EXXON WESTBURY), CENTEREACH
DEVELOPMENT CORP. (d/b/a MOBIL CENTEREACH
DEVELOPMENT), CORAM ASSOCIATES CORP., GREAT
NECK DEVELOPMENT CORP. (d/b/a EXXON SHOP -
GREAT NECK), HAUPPAUGE DEVELOPMENT CORP.,
HOLBROOK DEVELOPMENT CORP., ISLANDIA
DEVELOPMENT CORP. (d/b/a EXXON SHOP ISLANDIA),
ISLIP DEVELOPMENT CORP. (d/b/a MOBIL SUNRISE),
MAPLE AVENUE HAUPPAUGE DEVELOPMENT CORP.,
MEDFORD DEVELOPMENT CORP. (d/b/a EXXON SHOP -
64), MIDDLE ISLAND DEVELOPMENT CORP., MIDWOOD
ENTERPRISES, INC. (d/b/a JERICHO TURNPIKE
ENTERPRISES), NORTHPORT ENTERPRISES, INC. (d/b/a
MOBIL NORTHPORT), OCEANSIDE ENTERPRISES, INC.,
(d/b/a EXXON SHOP - OCEANSIDE), PORT JEFFERSON
DEVELOPMENT CORP.(d/b/a FARSI FUEL),
RONKONKOMA DEVELOPMENT CORP., SMITHTOWN
DEVELOPMENT CORP., STONY BROOK INDUSTRIES,
INC., SUFFOLK ENTERPRISES (d/b/a AMOCO - SUFFOLK),
VALLEY STREAM ENTERPRISES, INC., WESTBURY
ENTERPRISES, INC. (d/b/a MOBIL WESTBURY), and
WHEELER DEVELOPMENT LLC,

                        Defendants.
------------------------------------------------------------------------x

Index No. 602632/2012

Assigned Justice:
Hon. Vito M. DeStefano

Part 15 (Commercial Div.)

**STIPULATION OF
DISCONTINUANCE**

    IT IS HEREBY STIPULATED AND AGREED, by and between plaintiff and
defendants, through their respective undersigned attorneys of record, that, whereas no party
herein is an infant, conservatee, or incompetent person for whom a committee has been
appointed, and no person, not a party, has an interest in the subject matter of this action, this
action, shall be discontinued, with prejudice, with each party to bear its own costs. This
stipulation may be executed in counterparts which, together, shall constitute one and the same
fully executed stipulation. For the purposes of this stipulation, copies of signatures shall be

A/76265407 1

deemed originals. Any party hereto may present this stipulation to the Court to be so-ordered without notice to any other party.

Dated: New York, New York
     August __, 2014

BINGHAM McCUTCHEN LLP

By:_____
     Charles L. Solomont
399 Park Avenue
New York, NY 10022
(212) 705-7000
*ATTORNEYS FOR GARBER BROTHERS, INC.*

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

By:_____
     Andrew E. Curto
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
516-248-1700
*ATTORNEYS FOR STEVEN KESHTGAR AND 211 ENTERPRISE INC., A&B MART & SERVICE, INC., AIRPORT DEVELOPMENT CORP. (D/B/A EXXON SHOP AIRPORT), BAYSIDE DEVELOPMENT LLC., BOHEMIA DEVELOPMENT CORP., BRENTWOOD DEVELOPMENT CORP., CARMAN DEVELOPMENT CORP. (D/B/A EXXON WESTBURY), CENTEREACH DEVELOPMENT CORP. (D/B/A MOBIL CENTEREACH DEVELOPMENT), CORAM ASSOCIATES CORP., GREAT NECK DEVELOPMENT CORP. (D/B/A EXXON SHOP - GREAT NECK), HAUPPAUGE DEVELOPMENT CORP., HOLBROOK DEVELOPMENT CORP., ISLANDIA DEVELOPMENT CORP. (D/B/A EXXON SHOP ISLANDIA), ISLIP DEVELOPMENT CORP. (D/B/A MOBIL SUNRISE), MAPLE AVENUE HAUPPAUGE DEVELOPMENT CORP., MEDFORD DEVELOPMENT CORP. (D/B/A EXXON SHOP - 64), MIDDLE ISLAND DEVELOPMENT CORP., MIDWOOD ENTERPRISES, INC. (D/B/A JERICHO TURNPIKE ENTERPRISES), NORTHPORT ENTERPRISES, INC. (D/B/A MOBIL NORTHPORT), OCEANSIDE ENTERPRISES, INC., (D/B/A EXXON SHOP - OCEANSIDE), PORT JEFFERSON DEVELOPMENT CORP.(D/B/A FARSI FUEL), RONKONKOMA DEVELOPMENT CORP., SMITHTOWN DEVELOPMENT CORP., STONY*

A/76265907.1

-2-

*BROOK    INDUSTRIES,    INC.,    SUFFOLK*
*ENTERPRISES (D/B/A AMOCO - SUFFOLK),*
*VALLEY    STREAM    ENTERPRISES,    INC.,*
*WESTBURY    ENTERPRISES,    INC.    (D/B/A*
*MOBIL    WESTBURY),    AND    WHEELER*
*DEVELOPMENT*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In re:                                                      Case No. 14-75672 (AST)

Carman Avenue Development Corp.,                             Chapter 11

                            Debtor
-------------------------------------------------------------- x

### AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF SUFFOLK)s:-

      Carol Smith, being duly sworn deposes that deponent is not a party to the above-captioned action, is over the age of 18 years and resides at West Islip, New York.

      On January 19, 2016 deponent served the within NOTICE OF SETTLEMENT upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of the same, enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

Office of the U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY  11722

Garber Bros., Inc.
P.O. Box 296
Randolph, MA  02368

Morgan, Lewis & Bockius LLP
Attn:  Charles L. Solomont
One Federal Street
Boston, MA  02110

                                                        Carol Smith

Sworn to before me this
19th day of January, 2016

*/s/ Janine M. Zarrilli*
Notary Public
*Janine M. Zarrilli*
*Notary Public, State of New York*
*No. O1ZA5084708*
*Qualified in Nassau County*
*Commission Expires September 8, 2017*